BUCHOLZ, Appellant, v. HINZMAN, et al.; Respondents.

(183 N. W. 993.)

(File No. 4776. Opinion filed July 16, 1921.)

1. **Conveyancing—Recorded Executory Contract of Sale, Priority Between and Unrecorded Conveyance—Statute Construed.**

An executory contract of sale and purchase of realty, though executed, acknowledged and recorded is not given priority over unrecorded conveyances, by Sec. 592, Code 1919, providing that every conveyance of realty * * * is void as against subsequent purchaser or incumbrancer * * in good faith and for valuable consideration whose conveyance is first recorded, and Sec. 593, defining "conveyance" as used in Sec. 592 as, among other things, excepting executory contracts for sale or purchase of realty.

2. **Same—Grant as purporting Absolute Conveyance, But Intended as Defeasible on Conditions, Instrument of Defeasance, Necessity of Recording as Against Contract Purchaser—Statutes Compared—Murphy v. Plankinton Bank Modified—Which Section Controlling.**

Sec. 1575, Code 1919, providing that when a grant of realty purports to be an absolute conveyance, but is intended to be defeasible on performance of certain conditions, it is not defeated or affected as against one other than grantee, his heirs, etc., or persons having actual notice, unless a duly executed instrument of defeasance shall have been recorded, places conveyances of realty absolute in form but accompanied by de-

feasance contracts, in a class by themselves, and in effect declares failure to record such defeasance as against one acquiring a legal or equitable interest in the property so conveyed; the effect of such failure, as against persons without actual notice of defeasance, being same as though no such defeasance existed; and held, that executory contracts of purchase and sale are binding and valid between vendor and vendee, as though no defeasance existed, and parties' rights are not controlled by provisions of Sec. 592, providing that every such conveyance other than a lease, etc., is void as against subsequent purchaser or incumbrancer * * in good faith and for valuable consideration whose conveyance is first recorded, and Sec. 593, defining "conveyance" as used in Sec. 592 as among other things, excepting from instruments in writing creating, etc., or affecting the title, executory contracts for sale or purchase of realty; the effect of Sec. 1575 being to declare that a deed purporting to convey absolute title vests title which cannot be defeated or affected by unrecorded defeasance, as against any persons except those specifically named in the statute who may acquire through grantee in such conveyance a title or equitable right to the realty without "actual notice" of existence of defeasance contract. Murphy v. Plankinton Bank, 13 S. D. 501, reconsidered, and, wherein it, in construing what are now Secs. 592, 593 and 1575 to effect that words "any person" in latter section mean purchaser or incumbrancer in good faith, is held to have been obiter dictum, there being in that case no question of an unrecorded defeasance; and that opinion, in so far as it construed present Sec. 1575, is overruled. Held, further, that Sec. 1575 was enacted for a special purpose and is an exception to the general recording statute Secs. 592 and 593, and Sec. 1575 is controlling; that thereunder, aside from grantee, his heirs or devisees, it is only persons not having actual notice of defeasance who are therein protected.

Whiting and McCoy, JJ., dissenting.

Appeal from Circuit Court, Bon Homme County. Hon. Robert B. Tripp, Judge.

Action by Alexander Bucholz, against Martin Hinzman and Henry M. Hinzman, to enforce specific performance of a contract for purchase of realty. From a judgment for defendants, and from an order denying a new trial, plaintiff appeals. Reversed.

C. M. Stillwill, and F. B. Morgan, for Appellant.

F. M. Scoblic, and Wicks & Quinn, for Respondent.

SMITH, J. Action for specific performance of a contract for the purchase of real property. In April, 1914, the defendants, Martin Hinzman and Henry M. Hinzman, his son, each owned an undivided one-half interest in the premises in controversy. On April 17, 1914, the son, Henry, and his wife executed to the father, Martin, a warranty deed, absolute in form, conveying their interest in the land to the father. This deed was duly filed and recorded on July 23, 1915. At the time of the execution of this deed a defeasance contract was executed between the father and son which provided that the father should recover the son's half interest upon repayment of $600 loaned by the father, together with the amount of certain debts of the son paid by the father, with interest on all of said sums at 7 per cent. per annum. This defeasance contract was not recorded but was left with the father who placed it among his private papers in the bank, where it remained until the latter part of June, 1919, when it was delivered to the son, Henry, and placed of record.

In February, 1919, the plaintiff, Alexander Bucholz, went to Henry's home upon the land to see him about buying land. There is a conflict in the evidence as to the conversation which occurred at that time, but it is undisputed that Henry referred the plaintiff to Martin Hinzman, his father, as to the terms and conditions of the proposed purchase and sale and made no mention of the defeasance contract. It is also undisputed that plaintiff had knowledge of Henry's deed to his father, but had no actual notice or knowledge of the unrecorded defeasance contract. The plaintiff thereupon went to the home of the father and entered into an oral agreement for the purchase of the land at $110 per acre, with an understanding that they would have a written contract drawn up. A few days later plaintiff and Martin Hinzman went to a bank at Avon and entered into a written contract for the purchase and sale of the land, the plaintiff paying $2,000 cash, and agreeing to pay the further sum of $8,000 on the 5th day of March, 1920, when he was to receive a deed, and execute a note secured by a first mortgage on the land for $8,440, which was the balance of the purchase price, bearing interest at 6 per cent. per annum, payable March 25, 1925. Other provisions of the contract are immaterial here. This contract was filed for record July 10, 1919, and a registration tax of $16.40 paid.

Prior to the commencement of this action Martin Hinzman reconveyed to his son Henry a one-half interest in the premises by a deed which was filed for record July 2, 1919.

The defendants answer separately. The answer of Martin Hinzman, so far as material here, alleges, in substance, that the deed given him by his son, Henry, was given as security for moneys loaned and advanced by him to the son, that the son, with his family, was residing upon the land when the contract for sale to plaintiff was entered into, and that plaintiff was charged with knowledge that Henry owned an interest in the land, and that Henry Hinzman and his wife have refused to convey their interest to the plaintiff or to this defendant, and that this defendant notified plaintiff that he could not carry out said contract and offered to return the purchase money paid, and, upon plaintiff's refusal thereof, deposited the same in a bank of good repute subject to plaintiff's order and notified plaintiff thereof. Certain other matters pleaded are not material. Henry Hinzman pleads substantially the same defenses.

Findings, conclusions, and judgment for defendants. Plaintiff appeals from the judgment and an order overruling his motion for a new trial. It is conceded that the warranty deed from the son to the father was of record, that the instrument of defeasance was not recorded until June 23, 1919, and that plaintiff Bucholz had no actual notice of its existence at the time the written contract of purchase and sale was entered into. The decisive question upon these conceded facts is as to the effect of section 1575, Revised Code 1919, which reads as follows:

"When a grant of real property purports to be an absolute conveyance, but is intended to be defeasible on the performance of certain conditions, such grant is not defeated or affected as against any person other than the grantee or his heirs or devisees or persons having actual notice, unless an instrument of defeasance, duly executed and acknowledged, shall have been recorded in the office of the register of deeds of the county where the property is situated."

It is appellant's contention that the title vested in a grantee by an absolute deed of conveyance subject to defeasance cannot be defeated or affected, as against any person other than the grantee, his heirs or devisees, or persons having actual notice, unless

an instrument of defeasance duly executed and acknowledged shall have been recorded in the office of the register of deeds where the property is situated.

It is respondent's contention that a vendee under a written contract of sale of real property is not entitled to the protection of any of the provisions of the recording statutes, for the reason that such a contract is not entitled to protection under sections 592 and 593, Rev. Code 1919, and that such vendee is in the same position as an attaching creditor, and acquires only such interest as the vendor actually had when the contract was executed. Respondent's argument is founded upon the assumption that the rights of "persons" referred to in section 1575 are limited and controlled by section 592, which gives precedence only to subsequent purchasers and incumbrancers in good faith and for value, whose conveyances are first duly recorded, and section 593, which declares in effect that executory contracts for the sale or purchase of real property are not "conveyances" within the meaning of section 592, and respondent urges that such contracts are not within the protection of any of the provisions of the recording acts, including section 1575.

[1, 2] Respondent is in error. It is true that executory contracts for the sale and purchase of real property, even though in writing and executed, acknowledged, and recorded, are not given priority over unrecorded conveyances by sections 592 and 593. But the exception contained in section 593 as to executory contracts of sale and purchase of real property is not found in section 1575.

We think it was the clear legislative intent expressed in section 1575 to place conveyances of real property absolute in form, but accompanied by defeasance contracts, in a class by themselves, and to declare the effect of a failure to record such defeasances as against any person who may acquire an interest, legal or equitable, in the property conveyed by such deed. The effect of the failure to record such defeasance as against persons without actual notice of its existence is precisely the same as though no such defeasance existed. It follows that executory contracts of purchase and sale are binding and valid between the vendor and vendee, as though no defeasance existed, and the rights of the

parties are not controlled by the provisions of sections 592 and 593.

Construing a statute identical with our own in Patnode v. Deschenes, 15 N. D. 100-111, 106 N. W. 573, 576, the North Dakota court said:

"The most that can be said is that the defendant had constructive notice because of plaintiff's possession. It is not claimed, and cannot be claimed under the evidence in this case, that he had 'actual notice'—i. e., 'express information—of the fact' that the plaintiff's deed to Deschenes was for security. He not only had no knowledge of that fact, but he was also ignorant of the fact that plaintiff was in possession. It does not avail the plaintiff to say that he had constructive notice, for the Legislature had taken from her the right to contradict the terms of her deed and say that it is in fact a mortgage, except as to her grantee, his heirs or devisees, and persons having 'actual notice.' She cannot, therefore, assert as to the defendant, who took his mortgage from Deschenes without 'actual notice,' that her deed to Deschenes was merely a mortgage. What effect as notice a grantor's possession after conveyance would have under the general rule and independent of statute we need not discuss. The views expressed by the courts are not in harmony. [Citing cases.] In both of these cases the governing statute, section 4730, supra, was apparently overlooked both by court and counsel. The statute is unambiguous. Under it one standing in the position of the defendant as an incumbrancer without 'actual notice' is given the right to demand that as to him the plaintiff's deed shall not be defeated or affected."

The effect of the statute is to declare that a grant of real property purporting to convey an absolute title vests in the grantee a title which cannot be defeated or affected by an unrecorded defeasance, as against any person, except those specifically named in the statute, who may acquire, through the grantee in such conveyance, a title or equitable right in or to the land conveyed, without "actual notice" of the existence of the defeasance contract. Grigsby v. Verch, 34 S. D. 39, 146 N. W. 1075; Brown v. Ede, 42 S. D. 621, 176 N. W. 744.

[3] Respondents rely upon the decision in Murphy v. Plankinton Bank, 13 S. D. 501, 83 N. W. 575, as sustaining the posi-

tion of the trial court in this case. It is true that in that case this court said that the sections of statute which are now sections 592, 593, and 1575, should be construed together, and that the words "any person" in the latter section should be construed to mean a purchaser or incumbrancer in good faith. That portion of the opinion was unnecessary to the determination of the question then before the court, which was the question whether an attachment should have priority over an unrecorded deed which was in fact a mortgage. There was not in that case any question of an unrecorded defeasance, and, in so far as that opinion construed present section 1575, Rev. Code 1919, it is expressly overruled. Said section was enacted for a special purpose to meet a certain specific condition, and therefore is an exception to the general recording statutes (sections 592 and 593, Rev. Code 1919,) and when a case arises under section 1575, Rev. Code 1919, that section should control instead of the former. Coler v. Sterling, 15 S. D. 415, 89 N. W. 1022; Sanford v. King, 19 S. D. 334, 103 N. W. 28. We think it entirely unwarranted to restrict, by judicial construction, the meaning of the words "any person" to "purchasers or incumbrancers in good faith." Section 592, Rev. Code, does use such latter language, and under it a person without actual notice, but with knowledge of facts sufficient to put a prudent person upon inquiry, might be held not to be a purchaser or incumbrancer in good faith. Under section 1575, Rev. Code 1919, however, that question does not arise. Aside from the grantee or his heirs or devisees, it is only persons who do not have actual notice of the defasance who are not protected by that section. This difference between the two statutes shows a manifest legislative intent to differentiate the one from the other, which would be frustrated by the interpretation in Murphy v. Plankinton Bank, supra.

The undisputed facts bring this case squarely within section 1575, which is decisive of this appeal. The order and judgment of the trial court are reversed.

WHITING and McCOY, JJ. (dissenting.) We are unable to see where either section 592 or section 593 has any bearing upon this case. If plaintiff's contract had been recorded after the execution of the deed from Martin Hinzman to Henry Hinzman, but before such deed was recorded, we might have to consider

such sections. The only question properly before us is: Who is included in the word "person" as found in section 1575, R. C. 1919? Of course, it is clear that the word "person" is not intended to refer to every one regardless of any interest contractual or otherwise which he might have in the particular land in question. It seems clear to us, both from reason and from authority, that the word "person" must refer only to "purchasers," which term, of course, includes "incumbrancers." It is the accepted rule of law that one holding an executory contract of sale or purchase is not a "purchaser." He has no title whatsoever to the land. He has a mere chose in action—a right to acquire the title through the performance of certain acts, but nothing more. Unless we are willing to reverse the decisions of the court in the case of Murphy v. Plankinton, 13 S. D. 501, 83 N. W. 575, we certainly must hold that the word "person" as used in section 1575 does not include any one who is not a "purchaser" or "incumbrancer."

It seems clear to us that sections 1574 and 1575 were enacted to protect, against a transfer in the nature of a mortgage which has been improperly recorded in the deed records and not recorded at all in the mortgage records, only persons who may acquire an apparent legal title or incumbrance to. or. upon land without actual notice of such transfer in nature of a mortgage.